**Joseph Frank VOROS, Appellant,**

v.

**Kathleen TURNAGE, Appellee.**

**No. 01–92–00013–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 6, 1993.

Glendon B. Adams, Richard A. Mayhan, Stafford, for appellant.

James B. Hicks, Waller, for appellee.

Before COHEN, SAM BASS and HEDGES, JJ.

## OPINION

COHEN, Justice.

This is an appeal from a trial to modify a divorce decree.

Joseph F. Voros and Kathleen Turnage were divorced in 1986. The decree designated Turnage as managing conservator and Voros as possessory conservator. Voros was ordered to pay child support for their two children. Voros was not ordered to provide medical insurance for the children.

In 1990, Turnage moved to modify the divorce decree, requesting increased child support and assistance with medical insurance for the children. Turnage also sought to modify Voros' access and visitation to the children, claiming the original terms were unworkable.

Voros resisted the motion, and filed a cross-motion for modification seeking increased visitation with the children.

The judge ordered Voros to pay increased child support and granted Voros increased possession and visitation rights in the summer. The judge, however, disallowed Voros possession of the children on Wednesday evenings, and disallowed Voros possession for an extra day whenever his regularly scheduled weekend visitation coincided with a Friday or Monday holiday. Further, the judge ordered Turnage to provide medical insurance for the children. Voros was ordered to pay one-half of all uninsured medical expenses for the two children. His liability for these expenses was capped at $2,500 per year. The judge granted Voros an offset against his increased child support obligation for amounts paid to cover the children's uninsured medical expenses.

In his first point of error, appellant claims the trial judge abused her discretion by denying appellant standard visitation rights mandated by TEX.FAM.CODE ANN. § 14.033 (Vernon Supp.1993).

Appellate courts give trial judges wide discretion with respect to custody,

control, possession, and visitation matters involving the child. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982). The judgment of the trial judge will be reversed only if it appears from the record as a whole that the judge abused her discretion. *Gillespie*, 644 S.W.2d at 451. The test for abuse of discretion is whether the trial judge acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990).

■ The original decree named appellant as possessory conservator of the children. The legislature has provided guidelines for trial judges to follow when determining periods of possession for a possessory conservator. TEX.FAM.CODE ANN. § 14.03(b) (Vernon Supp.1993). There is a rebuttable presumption that the standard possession order provides the minimum possession of the child for a parent named as a possessory conservator and that the order is in the best interests of the child. TEX.FAM.CODE ANN. § 14.033(k) (Vernon Supp.1993).[1] If the judge orders less time of possession than the guidelines require, she shall, upon timely request, state in the order the specific reasons for all deviations from the standard possession order. *Id.* This requirement in section 14.033(k) is mandatory. *See Chamberlain v. Chamberlain*, 788 S.W.2d 455 (Tex.App.—Houston [1st Dist.] 1990, writ denied) (court held virtually identical language in TEX.FAM.CODE ANN. § 14.057 was mandatory and required the judge to file findings of fact detailing specific reasons an order varied from the guidelines).

Here, the trial judge varied from the guidelines by denying appellant possession

of the children on Wednesday evenings, and holidays that extended weekends. *See* TEX.FAM.CODE ANN. § 14.033(c)(2), 14.033(d) (Vernon Supp.1993). Despite Voros' timely request, however, the judge did not state in the order the specific reasons for the deviations from the standard possession order. As such, we stayed proceedings in this Court and directed the judge to prepare supplemental findings of fact, pursuant to TEX.FAM.CODE ANN. § 14.033(k), stating her specific reasons for deviating from the standard order. *Voros v. Turnage*, 849 S.W.2d 353 (Tex.App.—Houston [1st Dist.] 1992) (order). The trial judge has complied with our directions, and we can now determine whether she abused her discretion in deviating from the standard order.

Although the possession guidelines create a rebuttable presumption, they do not force a judge to give every possessory conservator the same set of visitation orders. A judge may determine the application of the guidelines would be unworkable or inappropriate under the circumstances and not in the best interests of the child. TEX. FAM.CODE ANN. § 14.033(k). "In determining the terms of possession of a child, the [trial judge] shall be *guided* by the guidelines, and may consider, *in varying from* or following the guidelines:

1) the age circumstances, needs, and best interests of the child;

2) the circumstances of the managing conservator and of the parent named as possessory conservator; and

3) any other relevant factor."

TEX.FAM.CODE ANN. § 14.032(c) (Vernon Supp.1993) (emphasis added).

■ The judge's findings of fact here reflect several factors that influenced her

---

1. TEX.FAM.CODE ANN. § 14.033(k) provides:
   Rebuttable Presumption. In any suit affecting the parent-child relationship, there is a rebuttable presumption that the "standard order" set forth in this section provides reasonable minimum possession of a child for a parent named as a possessory conservator and that the order is in the best interest of the child. A court may determine that the application of these guidelines would be unworkable or inappropriate under the circumstances and not in the best interest of the

child. Without regard to Rules 296 through 299, Texas Rules of Civil Procedure, in all cases in which possession of a child by a parent is contested and the possession of the child is set by the court in variance of the guidelines, on written request made or filed with the court not later than 10 days after the hearing or on oral request made in open court during the hearing, the court shall state in the order the specific reasons for all deviations from the standard possession order.

to deviate from the standard possession order regarding Wednesday and extended holiday visitations. The judge found:

1) Evidence showed, as did an in-chambers interview with the children, that Turnage and the children have established a routine and are active together in church and Boy Scout activities that occur during the weekdays. In the interview, the judge explored the possibility of the father's involvement in some of these mid-week activities and found that it was neither practical nor the children's desire that the current routine be disrupted. Testimony showed that even though Voros was given a schedule of little league games, he failed to bring the children to games during his periods of visitation. The judge found that the disruption of the involvement of the children in their activities and routine was not in the best interests of the children, and was good cause for variance from the guidelines;

2) Testimony showed one of the children had some special psychological needs and is in counseling. Testimony and the interview with the children revealed that the exchange of the children between parents continues to be hostile and disruptive to the children. The judge found that the additional disruption in the middle of the week is not in the children's best interest and is good cause for variance from the guidelines;

3) The distances between the residences was found to be another factor that renders Wednesday visitation impractical. The travel time between the parties residences exceeded an hour. Moreover, one child had symptoms of epilepsy and needed a consistent and stable environment. The judge found Wednesday visitation would be disruptive of that consistency;

4) The judge found that because this is a modification of a prior order, and not an original divorce, and because the children are now 11 and 14 years old and have established outside activities, the children's desires expressed to the judge

were taken into account when the judge varied from the guidelines.

Other courts have refused to find an abuse of discretion when a trial judge eliminated mid-week visitation for reasons similar to those here. In *Fair v. Davis*, 787 S.W.2d 422, 431 (Tex.App.—Dallas 1990, no writ), for example, the trial judge modified a decree and eliminated the mid-week visitation for reasons which included: 1) in the time since the divorce, the parties moved further from each other, and the children were spending one or two hours of the five hour mid-week visitation on the road; 2) the children were three years older since the divorce, and their age had caused a substantial change in the scope of their activities; 3) one child was having difficulty with homework and showing a lack of performance at school, which was possibly caused by a distraction or diverted attention the day the child returned from the mid-week visitation; 4) the children were involved in piano lessons and gymnastics that were scheduled on Monday and Wednesday evenings, and those activities were disrupted because the father, at times, had refused to take the children to the activities on Wednesdays and would not allow the children to practice piano during periods of visitation. 787 S.W.2d at 429–32.

Not only are the factors here as strong as those found in *Fair*, in addition, the trial judge here also took action to offset the elimination of the mid-week visitation and extended holiday. The judge granted Voros a telephonic visit with the children on two Wednesdays each month. Moreover, in modifying the prior decree, the judge granted what Voros himself characterizes as "an extensive increase in the visitation and access of Voros with his two children." This increase included extended possession time for Voros during the children's summer vacation.

■ Voros asserts there is no evidence anywhere in the record which addresses the issue of weekend possessions extended by holidays.[2] As mentioned above, the

---

**2.** Section 14.033(d) provides:

Weekend Possession Extended by Holiday. Except as otherwise explicitly provided, if a

judge listed several factors which influenced her to deviate from the guidelines regarding Wednesday and extended holiday visitations. One was the children's desires expressed to the judge in their interview. There is no record of that interview. In the absence of a statement of facts, the reviewing court will presume the evidence is sufficient to support the judgment. *Men's Wearhouse v. Helms*, 682 S.W.2d 429, 430 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), *cert. denied*, 474 U.S. 804, 106 S.Ct. 38, 88 L.Ed.2d 31 (1985). Thus, we must presume the evidence from that interview supports the judge's findings.

■ Voros claims this Court cannot consider any findings based on the children's interview because it was not recorded. Voros also asserts that without considering the interview, no evidence supports the judge's findings. We disagree.

The Family Code provides: "In a nonjury trial, the court may interview the child in chambers to ascertain the child's wishes as to his conservator.... The court may permit counsel to be present at the interview. On the motion of a party, the court shall cause a record of the interview to be made when the child is 12 years of age or older, and that record of the interview shall be made part of the record in the case." TEX. FAM.CODE ANN. § 14.07(c) (Vernon 1986).

Here, at the time of the hearing, one child was almost 13 and the other almost 10. The record shows that Voros requested the judge interview the children. The record, however, does not show that Voros either requested to be present or requested that the interview be recorded. As such, Voros waived his right to complain now of the interview and the lack of its record. *See Fettig v. Fettig*, 619 S.W.2d 262, 268 (Tex. Civ.App.—Tyler 1981, no writ); *Wilkinson v. Evans*, 515 S.W.2d 734, 737 (Tex.Civ. App.—Dallas 1974, writ ref'd n.r.e.).[3]

In sum, in light of the evidence in the record, and the presumptions from the lack of a record in the children's interview, we find the trial judge did not abuse her discretion in deviating from the standard order.

Point of error one is overruled.

In his second point of error, Voros claims the trial judge abused her discretion by ordering Turnage to maintain the children's health insurance, and in requiring him to pay one-half of the uninsured medical expenses.

The original divorce decree did not require insurance for the children. The Family Code now requires medical insurance as part of the child support obligation. TEX. FAM.CODE ANN. § 14.061 (Vernon Supp. 1993).[4] Voros, the obligor, claims section

---

weekend period of possession of the possessory conservator coincides with a school holiday during the regular school term or with a federal, state, or local holiday during the summer months in which school is not in session, the weekend possession shall extend until 6 p.m. on a Monday holiday or school holiday or shall begin at 6 p.m. Thursday for a Friday holiday or school holiday, as applicable.
TEX.FAM.CODE ANN. § 14.033(d) (Vernon Supp. 1993).

3. Apart from section 14.07(c), section 11.14(d) of the Family Code provides that in any suit affecting a parent-child relationship: "A record shall be made as in civil cases generally unless waived by the parties with the consent of the court." TEX.FAM.CODE ANN. § 11.14(d) (Vernon 1986). A party may waive the making of a record by not requesting a record or not objecting to the lack of record during the hearing. *O'Connell v. O'Connell*, 661 S.W.2d 261, 263 (Tex.App.—Houston [1st Dist.] 1983, no writ); *Ex parte Pappas*, 562 S.W.2d 865, 866–67 (Tex.

Civ.App.—Houston [1st Dist.] 1978, orig. proceeding). Section 11.14 requires a showing of diligence and responsibility on behalf of the complaining party to be certain a record is made. *See Parsons v. Parsons*, 722 S.W.2d 751, 754 (Tex.App.—Houston [14th Dist.] 1986, no writ); *Ex parte Jones*, 700 S.W.2d 15, 17 (Tex. App.—Eastland 1985, no writ). Thus, even under section 11.14(d), Voros waived any complaint that the interview was unrecorded.

4. § 14.061. Health Insurance
  (a) In any suit affecting the parent-child relationship, a court shall order that health insurance be provided for the child. The court *shall consider* the cost and quality of health insurance coverage available to the parties and *shall give priority* to health insurance coverage supplied by an employer of one of the parties.
  (b) In determining the manner in which health insurance for the child is to be provided, the court *shall consider* the following factors:

14.061 creates a rebuttable presumption that the obligor provide the insurance through his employer. He argues that when an obligor offers insurance coverage in complete compliance with state and federal guidelines, as he did, the trial judge *must* accept that offer. Because his employer has a health insurance policy that could cover the children, Voros claims the trial judge abused her discretion by refusing his offer of health care insurance. Voros relies upon *State v. Hernandez*, 802 S.W.2d 894 (Tex.App.—San Antonio 1991, no writ).

First, unlike language in other sections of the Family Code, section 14.061 does not create a rebuttable presumption requiring the judge to accept the obligor's offer of insurance when other alternatives are available. TEX.FAM.CODE ANN. § 14.061; *compare with* TEX.FAM.CODE ANN. § 14.-033(k) (rebuttable presumption that the standard possession order provides reasonable minimum possession of the child for possessory conservator and that the order is in the best interests of the child). Section 14.061(a) requires a judge to "consider" the costs and benefits and to "give priority" to employer plans, but section (b)(1) provides merely that a judge "may" order insurance through the obligor's employer, not that she must require employer coverage. Normally, the cost will be paid by the obligor, but because circumstances vary, the trial judge should be allowed great flexibility in fashioning an appropriate order. John J. Sampson, *Conservatorship, Possession, and Support of Children*, 21 TEX.TECH.L.REV. 1323, 1392 (1990).

Second, *Hernandez* did not hold that a judge must always require insurance offered by the obligor's employer. In *Hernandez*, the original support order did not require insurance. *Hernandez*, 802 S.W.2d at 897. The obligee sought an order requiring the obligor to provide insurance. *Id.* The obligor offered to cover the child on his employer's policy. *Id.* Even though both parties wanted the obligor to provide insurance through his employer, the trial judge refused to modify the original order. *Id.* The court of appeals held that was reversible error, and ordered the obligor to provide insurance through his employer. *Id.* Thus, *Hernandez* requires a trial judge to accept an obligor's offer of employer coverage only when rejecting that offer would leave the child totally uninsured. Any other result would defeat the purpose of section 14.061, to require health insurance for children in any suit affecting the parent-child relationship.

Here, unlike *Hernandez*, the trial judge held several options for providing coverage. Turnage wanted the children covered by her insurance policy so they could continue to see the same doctors, and wanted Voros to pay for that coverage. Voros wanted the children covered by his employer's policy, even though it would cost him $2,100 per year, would not cover expenses for certain medical and psychological treatment needed by the children, and, by his own admission, did not provide good coverage for psychological counseling. Consistent with the flexibility allowed by section 14.061, the judge fashioned an order she found to be in the best interests of the children.

■ "The best interest of the child shall always be the primary consideration of the

(1) if health insurance is available for the child at the obligor's place of employment, the court *may* order the obligor to include the child in the obligor's health insurance; or
(2) if health insurance is not available for the child at the obligor's place of employment but is available for the child at the obligee's place of employment, the court may order the obligee to provide health insurance for the child and in addition may order the obligor to reimburse the obligee for the actual cost of the health insurance for the child; or
(3) if health insurance is not available for the child at either the obligor's or the obligee's

place of employment, the court may order the obligor to provide health insurance for the child to the extent that the insurance is available for the child from another source and the obligor is financially able to provide it.
(c) Any amount that an obligor is required to pay for health insurance for the child under this section is in addition to the amount that the obligor is required to pay for child support under the guidelines for child support and is a child support obligation and may be enforced as a child support obligation.
(emphasis added).

court in determining questions of managing conservatorship, possession, and support of and access to a child." TEX.FAM. CODE ANN. § 14.07(a) (Vernon Supp.1993). Trial judges have wide discretion in determining what is in the best interest of the child. *Weimer v. Weimer*, 788 S.W.2d 647, 650 (Tex.App.—Corpus Christi 1990, no writ). A decision regarding the best interest of the children is discretionary and will be reversed only for abuse of discretion. *Gillespie*, 644 S.W.2d at 451. The test for abuse of discretion is whether the judge acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Worford*, 801 S.W.2d at 109.

The order here called for Turnage to provide, at her sole cost, insurance for the children. This allowed them to continue seeing the same doctors and receive treatment from the preferred psychologists. The order further required Voros to pay one-half of the uncovered medical expenses, including psychological counseling. That requirement is neither arbitrary nor unreasonable. The judge capped appellant's uncovered medical expenses at $2,500 per year, approximately the amount he would have paid had the judge required him to insure the children through his employer. Moreover, the judge allowed Voros to offset the payments for uninsured medical expenses against his child support obligation, which is not required by law. *See* TEX.FAM.CODE ANN. § 14.061(c) (Vernon Supp.1993). The judge set Voros' child support obligation below the statutory guidelines because of his duty to pay the uninsured medical expenses. For these reasons, we hold the ruling was not arbitrary or capricious, and the judge did not abuse her discretion.

Point of error two is overruled.

The judgment is affirmed.